UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| ALLEN HAMMLER, Plaintiff, v. J. HERNANDEZ, et al., Defendants. | Case No.: 18cv259-CAB-MDD<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 15]** |
|---|---|

This Report and Recommendation is submitted to United States District Judge Cathy Ann Bencivengo pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 27.1(c) of the United States District Court for the Southern District of California.

For the reasons set forth herein, the Court **RECOMMENDS** Defendants Motion to Dismiss be **GRANTED**.

## I. PROCEDURAL HISTORY

Plaintiff Allen Hammler ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis. (ECF Nos. 1, 5). On February 2, 2018, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1). Plaintiff's complaint sets forth claims against two individuals alleging that they

1

retaliated against him in violation of the First Amendment and failed to protect him in violation of the Eighth Amendment. (*Id.* at 3-25).

On August 9, 2018, Defendants moved to dismiss the failure to protect claim and all claims against both defendants filed in their official capacities. (ECF No. 15-1 at 5-7). Defendants contend that Plaintiff may not proceed with his failure to protect claim because he has not alleged a physical injury, as required by 42 U.S.C. § 1997e(e), and that Eleventh Amendment Immunity prohibits Plaintiff from suing Defendants in their official capacities. (*Id.*). Defendants further argue that they are entitled to qualified immunity as to Plaintiff's failure to protect claim. (*Id.* at 7).

Plaintiff opposes the motion to dismiss on the grounds that he was subjected to intentional torture for no penological reason. (ECF No. 18 at 3). In response to Defendants' Eleventh Amendment immunity argument, Plaintiff "acquiesces and withdraws claims as it relates to Defendants' liabilities in their official capacities." (*Id.* at 2).

Defendants reply that Plaintiff never specified the intentional torture he suffered and concedes that he never suffered a "flesh wound." (ECF No. 19 at 3).

## II. BACKGROUND FACTS

These facts, taken from the Complaint, should not to be construed as findings of fact by the Court. Plaintiff has filed several 602 Complaints against various Corrections Officers for assaults occurring on three separate occasions. (ECF No. 1 at 3). Plaintiff first alleges that he was assaulted by Corrections Officer Avilez on November 7, 2016. (*Id.*). After filing a complaint following the Avilez incident, the named officers and their co-workers began treating Plaintiff with "contempt." (*Id.*).

On November 15, 2016, Defendant Hernandez and Corrections Officer

2

Figueroa, while escorting Plaintiff from his cell to a group meeting, had Plaintiff in both wrist and leg restraints. (*Id.* at 4). During this escort, Defendant Hernandez began to violently shake Plaintiff by the arm, commonly known as "rag dolling" him. Plaintiff believed that Defendant Hernandez was attempting to provoke Plaintiff, whose reaction would give Defendant Hernandez a reason to slam Plaintiff to the ground. (*Id.*). Plaintiff told Hernandez that Plaintiff knew what the officer was attempting to do and Hernandez responded "[S]hut the fuck up and walk. You turn around and look at me again and you['re] going down." (*Id.*). Once they arrived at Plaintiff's group meeting, Defendant Hernandez forced Plaintiff to kneel on a slippery metal stool to remove Plaintiff's leg restraints. (*Id.* at 4-5). Plaintiff indicated he was about to fall off the stool and Defendant Hernandez pushed Plaintiff, causing his knee to slide off the stool. (*Id.* at 5). Plaintiff told Hernandez that he would be filing a complaint, to which Hernandez responded "I'm gonna escort you to yard and we'll see if you'll be talkin' all that shit… just go to yard and don't bitch out." (*Id.*).

Plaintiff then spoke with Lieutenant Canedo and relayed his interaction with Defendant Hernandez. (*Id.*). Plaintiff requested that Defendant Hernandez be prohibited from escorting Plaintiff in the future. Canedo told Plaintiff that he would look into it. (*Id.* at 6). However, both Hernandez and Figueroa returned to escort Plaintiff back to his cell following his group meeting. During the return walk, Defendant Hernandez told Plaintiff "You went crying to the Lieutenant, I knew you were a bitch." (*Id.*).

When the three men returned to Plaintiff's cell, Plaintiff again knelt to have his leg restraints removed, all the while receiving taunts from Defendant Hernandez. (*Id.* at 7). Defendant Hernandez indicated that Plaintiff better stay in the Administrative Segregation Unit ("ASU") or

Hernandez would make sure Plaintiff was "…fucked up out there," referring to the yard. (*Id.*).

On the same day, Plaintiff met with clinical Psychologist Nance. (*Id.*). Plaintiff discussed his interaction with and threats from Defendant Hernandez. Defendant Hernandez overheard the conversation, during which Defendant Hernandez made himself visible to Plaintiff, but not Nance, and began making "crybaby" sounds and wiping away invisible tears. (*Id.*). When Plaintiff pointed this out to Nance, Hernandez stepped out of sight behind a wall, though Nance heard Defendant's crybaby noises. (*Id.* at 9).

At the end of Plaintiff's session with Nance, Defendant Hernandez attempted to both confiscate Plaintiff's shoes and escort Plaintiff back to his cell. Plaintiff refused to allow Hernandez to escort him and made officers Sears and Maldonado promise that Hernandez would not be his escort. (*Id.*). On his way back to his cell Plaintiff was intercepted by his psychologist, Dr. Loebenstein, who requested to speak with Plaintiff. (*Id.* at 10). Plaintiff reported his experiences with Defendant Hernandez to Dr. Loebenstein. (*Id.*)

On November 17, 2016, Plaintiff was in his cell when Defendant Hernandez kicked the cell door, startling Plaintiff. (*Id.*). Hernandez indicated that he was escorting Plaintiff to his meeting with Dr. Loebenstein. Plaintiff refused to go with Defendant Hernandez, who then called Plaintiff a "bitch," and left. Dr. Loebenstein then went to Plaintiff's cell to see why Plaintiff didn't go to his appointment. Plaintiff again indicated that he would not be escorted by Defendant Hernandez. (*Id.*).

On November 28, 2016, Plaintiff was escorted by Sergeant Alvarez and Corrections Officer Dies to the Sergeant's office, where Plaintiff was interviewed on tape regarding Defendant Hernandez's threats. (*Id.* at 11). Upon returning to his cell following the interview, Plaintiff discovered officers

Hugh and Barrientos, "under the guise of searching for contraband…had trashed [his] cell." (*Id.*). The officers took a number of Plaintiff's legal books while others were torn in half. Plaintiff told the officers that what they had done was retaliation and that he would report them, to which Officer Alvarez responded, "with a sly grin," that they were allowed to search Plaintiff's cell. (*Id.*). Plaintiff later discovered that the officers had gone through his legal files and a file containing "documents, CDCR 602 Complaints, 22 Forms, etc." was missing. (*Id.* at 12).

On November 29, 2016, Plaintiff was escorted to his group meeting by Officer Rogers. Following the meeting Rogers was about to escort Plaintiff back to his cell when Defendant Hernandez joined the two and immediately began berating Plaintiff. (*Id.* at 12-13). Defendant Hernandez told Plaintiff that "snitching" on him would not change anything and reminded Plaintiff that Hernandez could "still get close to you, you little bitch." (*Id.* at 13). Defendant Hernandez told Plaintiff that were it not for the security cameras, Hernandez would "fuck [Plaintiff] up." Plaintiff stayed face forward, fearing that Hernandez would strike him from behind if he turned his head or engaged with Hernandez. (*Id.*). Later, Plaintiff questioned Rogers about what he overheard during the escort and Rogers indicated that he "hadn't been paying attention." (*Id.*).

On December 6, 2016, Plaintiff was in his cell when Inmate Jennings, escorted by Defendant Magallanes, stopped at Plaintiff's cell and gave Plaintiff a "kite" (letter) through the food port in Plaintiff's door. (*Id.* at 14). The kite was from Inmate Harris, who indicated that he was writing "on behalf of and at the behest of Defendant Hernandez." Harris wrote that Plaintiff had better not go forward with his complaints against Hernandez or Harris would have to get involved. (*Id.*). Harris indicated that Defendant

Hernandez "is the way he [Harris] feeds his kids." (*Id.* at 15). Harris also reminded Plaintiff that he was Plaintiff's first cellmate and that Harris knew where Plaintiff's children live. (*Id.*)

Plaintiff then called for a staff member and gave the kite to the first one to arrive, Dr. Saltzman. Plaintiff told Dr. Saltzman what occurred and Dr. Saltzman read the kite. (*Id.*). Dr. Saltzman then flagged down Defendant Magallanes and despite Plaintiff's protests that Defendant Magallanes was partially responsible for the kite, Dr. Saltzman gave the kite to Magallanes, who took and read the kite and did not return it to Dr. Saltzman. (*Id.* at 15-16). Plaintiff then had Dr. Saltzman sign a Form 22 as a receipt for the kite, anticipating that the kite would "go missing" as a cover-up for Defendants Magallanes and Hernandez's activities. (*Id.* at 16).

Both Canedo and Dr. Loebenstein attempted to have Dr. Saltzman indicate that Defendant Hernandez was named in the kite, however Dr. Saltzman refused, saying that he "did not read the kite extensively." (*Id.* at 16-17). Defendant Magallanes told Plaintiff on December 8, 2016, that he had thrown the kite away. (Id. at 18). Plaintiff then gave Defendant Magallanes a Form 22, requesting that Magallanes indicate in writing the name of the staff member named in the kite. Magallanes reported that he did not read the kite. (*Id.*).

On December 13, 2016, Plaintiff questioned Officer Juarez about the kite as the officer was collecting food trays. (*Id.* at 19). Juarez, while taking Plaintiff's neighbor's tray but looking at Plaintiff, said "[Y]ou know there was this guy who [used] to live in in Cell #150. Very respectful, never bothered nobody. One day I came to work and went by his cell. We talked and I left, told him I'd see him later. Then I came to work the next day and found out he'd cut his throat, killed his-self." (*Id.* at 19-20). Plaintiff responded that

the officers had to be careful of who they gave razors to and Juarez responded "… I guess he found out one of his daughters had died." Plaintiff interprets this interaction as a threat against his family. (*Id.* at 20).

On December 18, 2016, Plaintiff was transferred to the Department of State Hospitals and then to the Psychiatric Services Unit at California State Prison Sacramento. (*Id.*). Inmate Harris, author of the kite, had also been transferred to Sacramento. (*Id.*). Harris, from a holding cell near Plaintiff's cell, yelled out "I'd better not catch you. You know we're gonna end up on the same yard, so when you see me you know what's up." (*Id.* at 21). Plaintiff does not indicate whether a physical altercation with Harris occurred.

### III. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal quotations omitted). The pleader must provide the Court with "more than an un-adored, 'the-defendant-unlawfully-harmed-me' accusation.) *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements will not suffice." *Id.* "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [a court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations omitted).

A pro se pleading is construed liberally on a defendant's motion to dismiss for failure to state a claim. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citing *Ortez v. Washington Cnty.*, 88 F.3d 804, 807 (9th Cir.

7

1996)). The pro se pleader must still set out facts in his complaint that bring his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A court "may not supply essential elements of the claim that were not initially pled." Ivey v. Bd. Of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

## IV. DISCUSSION

**A. Eleventh Amendment Immunity**

Defendants are sued in both their individual and official capacities. (ECF No. 1 at 2). Defendants argue that they are entitled to Eleventh Amendment immunity as official-capacity claims for damages are barred. (ECF No. 15-1 at 5). As a result, Defendants request that all claims against them in their official capacities be dismissed. (*Id.*).

The general rule is that "[s]tate officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997). "Suits against state officials in their official capacity therefore should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

Here, in response to Defendants' Motion to Dismiss, Plaintiff withdrew the claims filed against Defendants in their official capacities. Accordingly, the Court **RECOMMENDS** that Defendant's Motion to Dismiss all Defendants in their official capacity for a violation of section 1983 be **GRANTED** and all claims against Defendants in their official capacities be **DISMISSED** with prejudice.

## B. Failure-to-Protect Claim

Defendants contend that Plaintiff's failure to protect claim cannot survive because he failed to allege any physical injury as required by 42 U.S.C. § 1997e(e). (ECF No. 15-1 at 6).

The Prison Litigation Reform Act ("PLRA") states, in part, that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). This provision requires "a prior showing of physical injury that need not be significant but must be more than de minimus." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir.2002). Here, as set forth in Plaintiff's Complaint and Opposition, the only injury that he claims with respect to the actions of Defendants is a psychological injury.

Therefore, the Court **RECOMMENDS** that the Motion to Dismiss Plaintiff's failure-to-protect claim be **GRANTED** and the failure-to-protect claim be **DISMISSED** without prejudice as to all defendants. Because of this recommendation, the Court will not discuss Defendants' qualified immunity argument.

## V. CONCLUSION

For the reasons set forth herein, it is **RECOMMENDED** that:

1) Defendants Motion be **GRANTED WITH PREJUDICE** as to Plaintiff's claims against Defendants in their official capacities.

2) Defendants' Motion be **GRANTED WITHOUT PREJUDICE** as to Plaintiff's failure-to-protect claim.

As a result, Plaintiff's only remaining claim is count one for First Amendment Retaliation against both Defendants.

This Report and Recommendation will be submitted to the United

States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the court and serve a copy on all parties by **December 28, 2018**. The document shall be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed by **January 4, 2019**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: December 11, 2018

Hon. Mitchell D. Dembin
United States Magistrate Judge