UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER,<br><br>        Plaintiff,<br><br>v.<br><br>J. HERNANDEZ, et al.,<br><br>        Defendants. | Case No.: 18cv259-CAB-MDD<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**[ECF No. 28]** |

This Report and Recommendation is submitted to United States District Judge Cathy Ann Bencivengo pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 27.1(c) of the United States District Court for the Southern District of California.

For the reasons set forth herein, the Court **RECOMMENDS** Defendants Motion to Dismiss be **GRANTED**.

## I. PROCEDURAL HISTORY

Plaintiff Allen Hammler ("Plaintiff") is a state prisoner proceeding *pro*

*se* and *in forma pauperis*. (ECF No. 5). Plaintiff filed his original complaint pursuant to 42 U.S.C. § 1983 on February 2, 2018. (ECF No. 1). The District Judge screened the complaint pursuant to 28 U.S.C. § 1915A. (ECF No. 5). The only claims to survive screening were the First Amendment retaliation and Eighth Amendment failure-to-protect claims. (*Id.* at 5-6). On January 9, 2019, the District Judge dismissed Plaintiff's Eighth Amendment failure-to-protect claim. (ECF No. 24). Plaintiff was granted leave to cure the deficiencies of his "failure-to-protect claim . . . no later than February 8, 2019." (*Id.* at 3). On February 7, 2019, Plaintiff filed the operative complaint. (ECF No. 25). Plaintiff's amended complaint is virtually identical to his original complaint.

On March 8, 2019, Defendants moved to dismiss the failure to protect claim. (ECF No. 28-1). Defendants contend that Plaintiff failed to state a claim because he has not alleged any physical injury and verbal harassment and threats do not rise to the level of an Eighth Amendment violation. (*Id.* at 7-9). Defendants argue in the alternative that they are entitled to qualified immunity. (*Id.* at 9-11).

Plaintiff opposes contending that Defendants were "deliberately indifferent to the serious risk of harm [by] thrusting Plaintiff into conflict with another prisoner." (ECF No. 30 at 4). Plaintiff contends his allegations establish some "substantive" violation of the Eighth Amendment rather than just a failure to protect claim. (*Id.* at 1). The Court carefully reviewed the amended complaint and Plaintiff's Eighth Amendment claim is properly characterized as one for failure to protect.

## **II. BACKGROUND FACTS**

These facts are taken from the Amended Complaint and should not be construed as findings of fact by the Court. Plaintiff alleges he was assaulted

2

18cv259-CAB-MDD

by Corrections Officer Avilez on November 7, 2016. (ECF No. 25 at 3). After filing a complaint against Avilez, the named Defendants and their co-workers began treating Plaintiff with "contempt." (*Id.*).

On November 15, 2016, Defendant Hernandez and Corrections Officer Figueroa placed Plaintiff in wrist and leg restraints and escorted him from his cell to a group meeting. (*Id.* at 4). During this escort, Defendant Hernandez began to violently shake Plaintiff by the arm, commonly known as "rag dolling" him. (*Id.*). Plaintiff believed that Defendant Hernandez was attempting to provoke him in order to have a reason to slam Plaintiff to the ground. (*Id.*). Plaintiff told Hernandez that he knew what the officer was attempting to do and Hernandez responded, "[S]hut the fuck up and walk. You turn around and look at me again and you['re] going down." (*Id.*).

After arriving at the meeting location, Defendant Hernandez forced Plaintiff to kneel on a slippery metal stool to remove Plaintiff's leg restraints. (*Id.* at 4-5). Plaintiff alleges Defendant Hernandez pushed him off the stool. (*Id.* at 5). Plaintiff told Hernandez that he would be filing a complaint, to which Hernandez responded "I'm gonna escort you to yard and we'll see if you'll be talkin' all that shit… just go to yard and don't bitch out." (*Id.*).

Plaintiff recounted his interaction with Defendant Hernandez to Lieutenant Canedo. (*Id.*). Plaintiff requested that Defendant Hernandez be prohibited from escorting him in the future. Canedo told Plaintiff that he would look into it. (*Id.* at 6). However, both Hernandez and Figueroa returned to escort Plaintiff back to his cell following his group meeting. During the return walk, Defendant Hernandez told Plaintiff "[y]ou went crying to the Lieutenant, I knew you were a bitch." (*Id.*).

When the three men returned to Plaintiff's cell, Plaintiff again knelt to have his leg restraints removed, all the while receiving taunts from

3

Defendant Hernandez. (*Id.* at 7). Defendant Hernandez indicated that Plaintiff better stay in the Administrative Segregation Unit ("ASU") or Hernandez would make sure Plaintiff was "…fucked up out there," referring to the yard. (*Id.*).

On the same day, Plaintiff met with clinical Psychologist Nance. (*Id.* at 8). Plaintiff discussed his interaction with Defendant Hernandez. Defendant Hernandez overheard the conversation, during which Defendant Hernandez made himself visible to Plaintiff, but not Nance, and began making "crybaby" sounds and wiping away invisible tears. (*Id.*). When Plaintiff pointed this out to Nance, Hernandez stepped out of sight behind a wall, though Nance heard Defendant's crybaby noises. (*Id.* at 9).

At the end of Plaintiff's session with Nance, Defendant Hernandez attempted to confiscate Plaintiff's shoes and escort Plaintiff back to his cell. Plaintiff refused to allow Hernandez to escort him and made officers Sears and Maldonado promise that Hernandez would not be his escort. (*Id.*). On his way back to his cell Plaintiff was intercepted by his psychologist, Dr. Loebenstein, who requested to speak with Plaintiff. (*Id.* at 10). Plaintiff reported his experiences with Defendant Hernandez to Dr. Loebenstein. (*Id.*)

On November 17, 2016, Plaintiff was in his cell when Defendant Hernandez kicked the cell door, startling Plaintiff. (*Id.*). Hernandez indicated that he was escorting Plaintiff to his meeting with Dr. Loebenstein. Plaintiff refused to go with Defendant Hernandez, who then called Plaintiff a "bitch," and left. (*Id.*). Dr. Loebenstein went to Plaintiff's cell to see why Plaintiff didn't go to his appointment. Plaintiff again indicated that he would not be escorted by Defendant Hernandez. (*Id.*).

On November 28, 2016, Plaintiff was interviewed on tape regarding Defendant Hernandez's threats. (*Id.* at 11). Upon returning to his cell

4

following the interview, Plaintiff discovered officers Hugh and Barrientos, "under the guise of searching for contraband…had trashed [his] cell." (*Id.*). Plaintiff told the officers that what they had done was retaliation and that he would report them. Officer Alvarez responded "with a sly grin," that they were allowed to search Plaintiff's cell. (*Id.*). Plaintiff later discovered that the officers had gone through his legal files and a file containing "documents, CDCR 602 Complaints, 22 Forms, etc." was missing. (*Id.* at 12).

On November 29, 2016, Plaintiff was escorted to his group meeting by Officer Rogers. Following the meeting Rogers was about to escort Plaintiff back to his cell when Defendant Hernandez arrived and immediately began berating Plaintiff. (*Id.* at 12-13). Defendant Hernandez told Plaintiff that "snitching" on him would not change anything and reminded Plaintiff that Hernandez could "still get close to you, you little bitch." (*Id.* at 13). Defendant Hernandez told Plaintiff that were it not for the security cameras, Hernandez would "fuck [Plaintiff] up." (*Id.*). Later, Plaintiff questioned Rogers about what he overheard during the escort and Rogers indicated that he "hadn't been paying attention." (*Id.*).

On December 6, 2016, Plaintiff was in his cell when Inmate Jennings, escorted by Defendant Magallanes, stopped at Plaintiff's cell and gave Plaintiff a letter ("kite") through the food port in Plaintiff's door. (*Id.* at 14). The kite was from Inmate Harris, who indicated he was writing "on behalf of and at the behest of Defendant Hernandez." (*Id.*). Harris wrote that Plaintiff had better not go forward with his complaints against Hernandez or Harris would have to get involved. (*Id.*). Harris indicated that Defendant Hernandez "is the way [Harris] feeds his kids." (*Id.* at 15). Harris also reminded Plaintiff that he was Plaintiff's first cellmate and that Harris knew where Plaintiff's children live. (*Id.*)

5

Plaintiff then called for a staff member and gave the kite to the first one to arrive, Dr. Saltzman. Plaintiff told Dr. Saltzman what occurred and Dr. Saltzman read the kite. (*Id.*). Dr. Saltzman then flagged down Defendant Magallanes and despite Plaintiff's protests that Defendant Magallanes was partially responsible for the kite, Dr. Saltzman gave the kite to Magallanes, who took and read the kite and did not return it to Dr. Saltzman. (*Id.* at 15-16). Plaintiff then had Dr. Saltzman sign a Form 22 as a receipt for the kite, anticipating that the kite would "go missing" as a cover-up for Defendants Magallanes and Hernandez's activities. (*Id.* at 16).

Both Canedo and Dr. Loebenstein attempted to have Dr. Saltzman indicate that Defendant Hernandez was named in the kite, however Dr. Saltzman refused, saying that he "did not read the kite extensively." (*Id.* at 16-17). Defendant Magallanes told Plaintiff on December 8, 2016, that he had thrown the kite away. (Id. at 18). Plaintiff then gave Defendant Magallanes a Form 22, requesting that Magallanes indicate in writing the name of the staff member named in the kite. Magallanes reported that he did not read the kite. (*Id.*).

On December 13, 2016, Plaintiff questioned Officer Juarez about the kite as the officer was collecting food trays. (*Id.* at 19). Juarez, while taking Plaintiff's neighbor's tray but looking at Plaintiff, said "[Y]ou know there was this guy who [used] to live in in Cell #150. Very respectful, never bothered nobody. One day I came to work and went by his cell. We talked and I left, told him I'd see him later. Then I came to work the next day and found out he'd cut his throat, killed his-self." (*Id.* at 19-20). Plaintiff responded that the officers had to be careful of who they gave razors to and Juarez responded "… I guess he found out one of his daughters had died." Plaintiff interprets this interaction as a threat against his family. (*Id.* at 20).

6

On December 18, 2016, Plaintiff was transferred to the Department of State Hospitals and then to the Psychiatric Services Unit at California State Prison Sacramento. (*Id.*). Inmate Harris, author of the kite, had also been transferred to Sacramento. (*Id.*). Harris, from a holding cell near Plaintiff's cell, yelled out "I'd better not catch you. You know we're gonna end up on the same yard, so when you see me you know what's up." (*Id.* at 21).

### III. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal quotations omitted). The pleader must provide the Court with "more than an un-adored, 'the-defendant-unlawfully-harmed-me' accusation.) *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements will not suffice." *Id.* "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [a court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations omitted).

A pro se pleading is construed liberally on a defendant's motion to dismiss for failure to state a claim. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citing *Ortez v. Washington Cnty.*, 88 F.3d 804, 807 (9th Cir. 1996)). The pro se pleader must still set out facts in his complaint that bring his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A court "may not supply essential elements of the claim that were not initially pled." Ivey v. Bd. Of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

## IV. DISCUSSION

**A. Failure to Protect Claim**

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (citation omitted) (internal quotation marks omitted). Specifically, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* This duty falls within the officials' obligation under the Eighth Amendment to provide "humane conditions of confinement." *Id.* at 832-33.

To establish a failure to protect claim, a prisoner must show that (1) he is "incarcerated under conditions posing a substantial risk of serious harm" and (2) prison officials acted with "deliberate indifference"—that is, they knew of and disregarded an excessive risk to his safety. *See id.* at 834, 837. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). Neither negligence nor gross negligence constitutes deliberate indifference. *Farmer*, 511 U.S. at 835-36 & n.4; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

As an initial matter, Plaintiff does not allege he was ever physically injured by Defendants, any other prison official, or any other inmate. Nor does Plaintiff allege anyone attempted to physically harm him. Plaintiff's

8

claim is based solely on allegations of verbal threats from Defendant Hernandez and a threat he received from Inmate Harris that was allegedly directed by Defendant Hernandez and facilitated by Defendant Magallanes. The Supreme Court has held that a prisoner does not have "to await a tragic event [such as an actual assault]" before obtaining preventive or injunctive relief. *See Farmer*, 511 U.S. at 845; *see also Holley v. Evans*, 15-cv-01077, 2016 WL 9045480 (N.D. Cal. 2016). But that is not the case here. Plaintiff does not and could not seek injunctive relief because at the time he filed his complaint he was no longer housed at R.J. Donovan Correctional Facility ("RJD") where the events giving rise to his claims occurred. (ECF No. 1). Rather, Plaintiff seeks recovery for litigation costs and punitive damages. (ECF No. 25 at 29).

To the extent Plaintiff's claim arises from the verbal threats he received from Defendant Hernandez, his claim fails as a matter of law. Generally, allegations of verbal harassment and threats fail to state a cognizable claim under § 1983. *See Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) *overruled in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). Although wrongful, verbal harassment—even if it includes abuse or threats—does not infringe upon a prisoner's Eighth Amendment rights. *See Somers v. Thurman*, 109 F.3d 614, 622 (9th Cir. 1997) ("We are mindful of the realities of prison life, and while we do not approve, we are 'fully aware that the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons.'").

To the extent Plaintiff's claim arises from the threat he received from Inmate Harris, the first prong of the failure to protect analysis requires Plaintiff to allege facts establishing a substantial risk to his safety. To support his position, Plaintiff cites a nonbinding Eighth Circuit case, *Arnold*

*v. Groose*. In that case, prison guards and inmates conspired and attempted to murder the plaintiff in an unsupervised tunnel where many inmate stabbings had taken place. *Arnold v. Groose*, 109 F.3d 1292, 1294-95 (8th Cir. 1997). Plaintiff alleges no such similar factual scenario. Plaintiff was in administrative segregation during all times relevant to this case. Unlike the plaintiff in *Arnold*, Plaintiff was never in close proximity or even visual sight of inmate Harris. Plaintiff also does not allege he was at risk of being moved back into the general prison population where he might be at risk of harm from Harris or any other inmate. Consequently, Plaintiff's allegations fail to establish he was at a substantial risk of harm while housed at RJD.

Twelve days after he received the letter from Inmate Harris, Plaintiff was transferred to the Department of State Hospitals to receive mental care. (ECF No. 25 at 20). He was discharged from the Hospital on March 4, 2017 and sent to California State Prison Sacramento. (*Id.*). Plaintiff did not return to RJD. At some point after Plaintiff left RJD, Inmate Harris was also transferred to California State Prison Sacramento. Plaintiff alleges Inmate Harris shouted threats at him while they were in nearby cells. It is unclear whether Plaintiff and Inmate Harris ever interacted or were involved in any physical interaction in Sacramento.

To the extent Plaintiff's claims rely on this interaction with Harris, he fails to establish the second prong of the failure to protect analysis. Plaintiff must allege facts establishing that Defendants were deliberately indifferent to his risk of harm. Plaintiff does not allege any fact from which the Court can infer that Defendants knew Plaintiff and inmate Harris would both be transferred sometime in the future to California State Prison Sacramento. Consequently, Plaintiff's allegations fail to establish that Defendants were deliberately indifferent to a risk of serious harm from Inmate Harris after

Plaintiff left RJD.

Finally, the Court notes that to the extent Plaintiff's allegations that the threats he received were in retaliation for his use of the grievance process, he is not without redress. The First Amendment retaliation claims remain pending and were not subject to this motion to dismiss.

Accordingly, the Court **RECOMMENDS** that the Motion to Dismiss Plaintiff's failure-to-protect claim be **GRANTED**. Because of this recommendation, the Court will not discuss Defendants' qualified immunity argument.

## V. CONCLUSION

Because Plaintiff has already been provided an opportunity to amend this claim to no avail, the Court finds granting further leave to amend would be futile. *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of ... leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (internal quotation marks omitted) (second alteration in original)). It is therefore **RECOMMENDED** that Defendants' Motion be **GRANTED WITH PREJUDICE** as to Plaintiff's failure to protect claim.

As a result, Plaintiff's only remaining claim is the First Amendment Retaliation against both Defendants.

This Report and Recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the court and

serve a copy on all parties by **June 24, 2019**. The document shall be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed by **July 8, 2019**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: June 3, 2019

_____
Hon. Mitchell D. Dembin
United States Magistrate Judge