UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER,<br><br>                              Plaintiff,<br>v.<br>J. HERNANDEZ, et al.,<br><br>                              Defendants. | Case No.: 18cv259-CAB-MDD<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR TERMINATING SANCTIONS**<br><br>[ECF No. 81] |

This Report and Recommendation is submitted to United States District Judge Cathy Anne Bencivengo pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 27.1(c) of the United States District Court for the Southern District of California.

For the reasons set forth herein, the Court **RECOMMENDS** Defendants' motion for terminating sanctions be **GRANTED** and this case be **DISMISSED WITH PREJUDICE**.

### I.   INTRODUCTION

Allen Hammler ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis* initiated this case by filing a civil rights complaint pursuant to 42 U.S.C. § 1983.  (ECF No. 1).  After disposition of two motions to dismiss,

Plaintiff's sole remaining claim is a First Amendment retaliation claim against J. Hernandez and A. Magallanes (collectively, "Defendants"). (ECF No. 33). Plaintiff generally alleges that Defendants retaliated against him for filing inmate grievances. (ECF No. 25 ("FAC") at 3). Specifically, Plaintiff alleges Defendants retaliated against him on November 7, 2016, November 15, 2016, November 17, 2016, November 29, 2016, and December 6, 2016 by either acting violently toward Plaintiff or threatening violence. (FAC at 3-25).

Presently before the Court is Defendants' motion for terminating and monetary sanctions for Plaintiff's failure to participate in his deposition and to comply with court orders. (ECF No. 81 ("Mtn.")). Plaintiff filed a response in opposition. (ECF No. 84 ("Oppo.")).

## II.  RELEVANT BACKGROUND

On March 10, 2020, Defendants attempted to depose Plaintiff. (ECF No. 58-1 at 4). Plaintiff refused to answer any question he felt was not relevant to his claim. (*Id.* at 5). For example, Plaintiff refused to answer whether he had ever used any aliases or other names in the past. (ECF No. 58-2 ("Pl. Mar. 10 Depo") 5:14-6:3). Defendants' Counsel (hereinafter, "Counsel") advised Plaintiff that he could lodge objections, but that he still had to answer the questions. (*Id.*). Plaintiff still refused to answer the questions. (*Id.*). The parties took several breaks in the hopes that Plaintiff would cooperate afterward. (*Id.* at 13:24-14:7). Plaintiff still refused to answer any questions unless the deposition proceeded on his terms. (*See id.* at 20:9-16).

Plaintiff did not treat Counsel with civility. At one point, he called Counsel a rookie and told her she was "out of water." (*Id.* at 14:5). He also interrupted Counsel while she was advising him of the rules of the

deposition, threatened to end the deposition, and accused Counsel of perjuring herself. (*Id.* at 22:16-18). Counsel suspended the deposition on the grounds that Plaintiff failed to meaningfully participate in the deposition. (*Id.* at 23:18-25).

On April 9, 2020, Defendants moved to compel Plaintiff's deposition testimony and for monetary sanctions in the amount of $3,880.78 for the costs and fees associated with the attempted deposition. (ECF No. 58). On April 16, 2020, the Court held a Mandatory Settlement Conference and discussed the motion to compel. (ECF No. 63). The Court declined to impose monetary sanctions because Plaintiff agreed to be re-deposed, but held the motion in abeyance. (*Id.* at 1). The Court admonished Plaintiff that his behavior was inappropriate.

On September 23, 2020, Plaintiff was re-deposed. (Mtn. at 7). At the very beginning of the deposition, Plaintiff demonstrated displeasure at being deposed. (*See* ECF No. 81-2 ("Pl. Depo.") at 38:11-12) (responding to Counsel's "[g]ood morning" with "[i]t's not."). At one point, Counsel stated that "[t]his [deposition] is going to go a lot easier for everyone if you just answer my question." (*Id.* at 115:5-6). Plaintiff responded that "I'm not looking to make things easy for anyone, especially you." (*Id.* at 115:11-12).

Plaintiff refused to answer Counsel's first question after objecting to it. After several minutes of discussing the matter with Plaintiff he provided an evasive answer:

Q: Have you ever used any aliases or gone by any other names?

A: Irrelevant.

Q: Your objection is noted for the record. You can answer.

A: No, I can't. I don't know what you're talking about.

> Q:  Have you ever used a name other than Allen John Hammler?
>
> A:  Asked and answered.
>
> Q:  Mr. Hammler, you haven't answered my question.  Can you please answer my question.
>
> A:  I have answered your question.  If you refuse to accept my answer, that's not my problem.

(*Id.* at 38:20-39:8).  Counsel then reminded Plaintiff that he was testifying under oath and that this testimony could be used in court.  (*Id.* at 39:9-25).  Plaintiff also indicated that he understood that his failure to answer appropriate questions could result in sanctions, including dismissal of this action.  (*Id.* at 42:12).  Counsel reiterated that "in a deposition you have the right to object to my questions and put your objections on the record, however, I am still entitled to your answer, even if you object to a question."  (*Id.* at 43:1-4).  Plaintiff stated that he "understood that completely."  (*Id.* at 43:9).  After several minutes of back and forth between Counsel and Plaintiff, Plaintiff answered the question.

The deposition transcript is replete with examples of bickering over immaterial details about the procedure of the deposition and substance of Plaintiff's First Amended Complaint ("FAC").  (*See e.g., id.* at 43:11-44:20, 64:14-69:21, 79:15-82:8, 85:25-87:15, 177:10-180:10, 181:16-182:7, 183:14-185:22).  At times, Plaintiff became agitated, raised his voice, and used profanity.  However, the Court's concern is with the substance and whether Plaintiff answered appropriate questions about the allegations against Defendants in his FAC.  Specifically, the Court is concerned with Plaintiff's refusal to answer questions regarding Defendants' involvement in the incidents alleged in the FAC, as indicated below:

4

Q:  . . . [N]either Defendant Hernandez nor Defendant Magallanes were involved in [the October 20, 2016] incident, were they?

A:  I don't recall to what extent.  As I've just said, there were a number of officers involved in all of these events.  Yours, your clients basically were involved in some of these events surrounding these instances, as I recall.
    So right now I don't believe that I can answer that and be totally forthright in saying what parts they played in any of these events.

Q:  So today you can't say whether or not Defendant Hernandez or Defendant Magallanes had any role in the . . . October 20, 2016 incident?

A:  To the extent that they are listed here, I believe that they are relevant for the simple fact that in the instances in this Complaint alleging the difference that are alleged, they're relevant for the simple that your client at some point in time took place in these events, and be it that I don't have actual notes of those events – those events in front of me, I don't want to speculate on the record what parts they played.

Q:  So today, as you sit here today you can't tell me what, if any, part Defendant Hernandez played in the October 20, 2016 incident, right?

A:  I don't have my notes in front of me.

Q:  As you sit here today do you have notes of this incident that you can refer to?

A:  Not here before me, no.

Q:  Do you have notes somewhere else?

A:  I do.

Q:  What notes do you have?

> A:  I keep notes of all events that occur with me inside of prison setting, and those notes are on record outside prison and inside prison. I have copies of those notes, but those notes are my work product and I don't have to discuss them here and now.

(*Id.* at 83:1-84:14). Plaintiff responded in similar fashion when questioned about Defendants' involvement in the November 7, 2016 and November 28, 2016 incidents. (S*ee id.* at 87:16-89:6).

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 37(d) authorizes the court "to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). The Court may sanction the party by "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence," "staying further proceedings" until the party has complied with discovery requirements, and "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(d)(3) (incorporating sanctions from Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi)).

Rule 37 allows for terminating sanctions that dismiss a plaintiff's action where there has been willfulness, bad faith, or fault. Fed. R. Civ. P. 37(b)(2)(A)(v); *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (internal quotation marks omitted). Courts may consider not only the effect of sanctions on the party being disciplined, but also the deterrent effect on future litigants and their counsel. *Nat'l Hockey League*, 427 U.S. 639 at 643.

In determining whether to dismiss an action, the Court considers: (1)

the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on the merits; and (5) the availability of less drastic sanctions. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). The amount of prejudice resulting from discovery violations and the availability of less drastic sanctions are "key factors." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

## IV.   DISCUSSION

Defendants contend that Plaintiff "was intentionally obstructionist and antagonistic, and refused to answer appropriate questions" at the second deposition. (Mtn. at 8). Accordingly, they request the Court issue terminating sanctions in this case. (*See generally*, Mtn.). Plaintiff maintains that he answered all questions unless the answers were privileged. (Oppo. at 2). He further argues that Counsel attempted to upset Plaintiff by asking inflammatory questions, by making faces while asking questions, and by attempting to assert authority over him.[1] (*Id.* at 5-6, 12).

The Court agrees with Plaintiff that some of Counsel's questions were inflammatory and that Counsel did not have the authority to require Plaintiff to act a particular way during the deposition. (*See e.g*, Pl. Depo. at 91:9-

---

[1] Plaintiff contends the Court should not consider the video of his deposition or the transcript because he did not receive the video and because the transcript was not properly served. (Oppo. at 7). However, Plaintiff does have the transcript and he cites to it throughout his opposition. (*See generally*, Oppo.). Moreover, Plaintiff's argument that he was not permitted to make changes to the deposition prior to the filing of the instant motion is irrelevant because he does not assert that he intends to amend his testimony. Accordingly, the Court considers the transcript. For purposes of this motion, the Court did not watch the video of the deposition. Plaintiff also argues the Court should not consider Deputy Attorney General Carson Niello's declaration because he did not know he attended the deposition. (Oppo. at 9). The Court did not rely on this declaration in deciding the instant motion.

92:24; 177:19-180:10) (asking Plaintiff whether he is paranoid and instructing Plaintiff to sit down for the deposition). As indicated previously, the deposition transcript is replete with examples of inappropriate behavior from both parties. However, the main concern here is Plaintiff's failure to answer questions about his own allegations in a case he chose to file. The Court, therefore, declines to address the immaterial bickering between the parties at the deposition.

**A.    Willfulness, Bad Faith, or Fault**

The Court takes Defendants' counsel's allegations very seriously and has once already admonished Plaintiff regarding his conduct at the March 10, 2020 deposition. The Court also recognizes that terminating sanctions are considered when a party who has previously been admonished repeats the conduct. *See, e.g., Glas-Weld Sys., Inc. v. Boyle*, No. 6:12-CV-02273-AA, 2013 WL 4828965, at *1 (D. Or., Sept. 6, 2013) (admonishing a *pro se* defendant that further profanity, threats, and taunts may result in additional sanctions); *Scott v. Palmer*, No. 1:09-CV-01329-LJO-SKO (PC), 2014 WL 6685813, at *3 (E.D. Cal., Nov. 26, 2014) (admonishing a state prisoner proceeding *pro se* that use of profanity, abusive conduct, and uncooperativeness at a deposition is grounds for terminating sanctions and advising him *pro se* status does not "shield him from the consequences of abusive behavior"); *Block v. Snohomish Cty*, No. C14-235RAJ, 2014 WL 6750475, at *10 (W.D. Wash., Dec. 1, 2014) (admonishing a plaintiff that the court will impose monetary sanctions if she uses "profanity or abusive invective" in communications with defense counsel).

Upon review of the deposition transcript, the Court finds that Plaintiff was disobedient and that his conduct was within his control. *See Jorgensen*, 320 F.3d at 912. Plaintiff spoke profanely, raised his voice repeatedly, and

refused to act with civility. (*See* Pl. Depo. at 43:11-44:20, 64:14-69:21, 79:15-82:8, 85:25-87:15, 177:10-180:10, 181:16-182:7, 183:14-185:22); (*See also* Oppo. at 11) (conceding that he became emotional and used "curse words"). While that conduct alone sufficiently shows bad faith, the Court instead focuses on Plaintiff's refusal to answer substantive questions about the allegations in his FAC. Plaintiff's failure to answer these questions demonstrates willfulness, especially in light of the fact that the Court admonished him at the Mandatory Settlement Conference. *See Jorgensen*, 320 F.3d at 912.

Moreover, Plaintiff testified that he has "[u]pwards of 20" civil rights actions against correctional staff. (Pl. Depo. at 47:11-15). Plaintiff is subject to a pre-filing order, which requires him to "seek and obtain leave of the presiding judge of any appropriate Court, prior to filing any new actions, against any defendant, in any forum in the State of California, based upon, or related in any way, to lawsuits alleging civil rights violations, lawsuits against prison officials, or federal habeas petitions." *Hammler v. Alvarez*, No. 18cv326-AJB-WVG, ECF No. 63 at 7. As such, the Court is mindful that imposing sanctions in this case may deter similar conduct in Plaintiff's other lawsuits. *See Nat'l Hockey League*, 427 U.S. at 643.

For these reasons, the Court finds that Plaintiff's actions were willful.

## B.   Terminating Sanctions

Having found that Plaintiff's conduct at his deposition was willful, the Court evaluates the five-factors considered in the Ninth Circuit to determine whether terminating sanctions are appropriate.

### 1.   Public's Interest in Expeditious Resolution of Litigation

"The public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir.

1999). This case has been pending since 2018 and has over 80 docket entries in what should be a relatively straightforward First Amendment retaliation claim. (*See* Docket). As such, this factor favors dismissal.

### 2. Court's Need to Manage Its Docket

The second factor weighs in favor of dismissal where the Court is required to address a litigant's failure to comply with discovery obligations. *See Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). This is Defendants' second motion for sanctions regarding Plaintiff's deposition. Moreover, Defendants' motions were brought in good faith. Accordingly, this factor favors dismissal.

### 3. Risk of Prejudice to Defendants

"To prove prejudice, a defendant must establish that plaintiff's actions impaired defendant's ability to proceed to trial or threatened to interfere with the rightful decision of the case." *Id.* at 642 (citing *Malone v. U.S. Postal Serv.*, 833 F.3d 128, 131 (9th Cir. 1987)). Though the pendency of a lawsuit on its own is insufficient prejudice to warrant dismissal, "[u]nnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Id.* at 643 (citing *Sibron v. New York*, 392 U.S. 40, 57 (1968)).

Defendants contend they "cannot prepare a motion for summary judgment—or even determine if such a motion is warranted—or prepare a defense for trial" due to Plaintiff's failure to meaningfully participate in his deposition. (Mtn. at 13). Defendants are entitled to know the facts upon which Plaintiff bases his claims and the documents which support his claims. Instead of cooperating at his deposition, Plaintiff has engaged in dilatory and obstructionist tactics. Plaintiff was warned that his failure to meaningfully participate in discovery would lead to sanctions, up to and including the

dismissal of this action. Nevertheless, Plaintiff refuses to comply.[2]

While Plaintiff indicated that everything he had was in the operative complaint, his failure to be deposed in this action substantially hinders Defendants' ability to investigate and defend against his allegations. (*See* Pl. Depo. at 182:18-183:13). A deposition is necessary for Defendants to question Plaintiff with respect to the events alleged in the complaint, the circumstances surrounding the events alleged in the complaint, any injuries received, and what damages he is claiming. Instead, due to Plaintiff's conduct, Defendants have been forced to expend time and resources attempting to secure his cooperation by scheduling two depositions and filing two motions. The inability to fully defend the case or to move forward with any potential dispositive motions, coupled with the delay, is prejudicial to Defendants. As such, this factor also weighs in favor of dismissal.

### 4. Public Policy Favoring Disposition of Cases on Their Merits

The fourth factor—public policy favoring disposition of cases on their merits—is strong and weighs against dismissal. *Pagtalunan*, 291 F.3d at 643. However, this factor "lends little support" where the behavior of the party against whom dismissal is sought impeded disposition on the merits. *In re: Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006); *Sanchez v. Rodriguez*, 298 F.R.D. 460, 472 (C.D. Cal. 2014) ("While the fourth factor of the test generally tends to cut against dismissal as a sanction, the public policy favoring the disposition of cases on their

---

[2] Extending discovery and pretrial deadlines in this case would be futile because Plaintiff failed to meaningfully answer questions regarding allegations in his FAC even after the Court admonished him at the Mandatory Settlement Conference.

merits is not furthered by litigants who . . . refuse to provide the defense with critical discovery, thereby hindering the preparation of a defense on the merits.").

Plaintiff's willful conduct has delayed the discovery process and has prevented this case from progressing towards a resolution on the merits. By failing to meaningfully participate in his deposition, Plaintiff has prevented Defendants from ascertaining the necessary facts to defend against his claims. In light of Plaintiff's conduct, the Court finds that this factor does not weigh against dismissal.

**5. Consideration of Less Drastic Sanctions**

A district court must consider the impact of a sanction and whether a less severe sanction would adequately address a party's failure to engage in the discovery process. *Malone*, 833 F.2d at 131-32. The Court has considered lesser sanctions, but no lesser sanction is warranted. Evidentiary sanctions would be ineffective, as Plaintiff would still be able to testify to information that he withheld from Defendants at the deposition and the Court would have no practical way of excluding such testimony. Monetary sanctions are also ineffective because of Plaintiff's *in forma pauperis* status. He would likely be unable to pay any monetary sanctions.

Additionally, the Court admonished Plaintiff about his discovery obligations and warned him about the consequences of noncompliance, but Plaintiff has indicated no intent to comply with any rulings or orders by the Court. The Ninth Circuit has explained that "[a] district court need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives." *Henderson*, 779 F.2d at 1424. The Court finds that there are no other, lesser sanctions that would be satisfactory or effective.

**6. Conclusion**

Upon due consideration of the five factors, the Court finds dismissal of this case warranted.

**C. Reasonable Expenses**

Defendants also request fees and costs associated with their two attempts to take Plaintiff's deposition and their two motions for sanctions. (Mtn. at 16). Counsel declares that Defendants incurred $3,880.78 in fees and costs associated with Plaintiff's March 10, 2020 deposition and $2,410.60 in fees and costs for Plaintiff's September 23, 2020 deposition. (ECF No. 81-2 ("Shryock Decl.") ¶¶ 25-27).

Federal Rule of Civil Procedure 37 requires "the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

As noted, Plaintiff is proceeding *in forma pauperis*, which makes it unlikely that he would be able to pay any monetary sanctions. As such, it would be unjust to require Plaintiff to pay the reasonable expenses caused by his failure to meaningfully participate in his deposition.

## V. CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** that Defendants' motion for terminating sanctions be **GRANTED** and that this case be **DISMISSED WITH PREJUDICE**.

**IT IS ORDERED** that no later than **December 9, 2020**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be

filed with the Court and served on all parties no later than **December 16, 2020**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1988).

**IT IS SO ORDERED**.

Dated: November 17, 2020

_____
Hon. Mitchell D. Dembin
United States Magistrate Judge